UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CELL DEAL INC.,                                                    :
                                                                   :
                             Plaintiff,                          :
                                                                   :        **REPORT AND**
        -against-                                            :        **RECOMMENDATION**
                                                                   :
FEDEX FREIGHT, INC.,                                               :        21-CV-788 (DG)(MMH)
                                                                   :
                             Defendant.                          :
------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

       Plaintiff Cell Deal Inc. ("Cell Deal") sued Defendant FedEx Freight, Inc. ("FedEx"), alleging violations of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 *et seq.* (the "Carmack Amendment"). (*See generally* Am. Compl., ECF No. 8.)[1] Before the Court is FedEx's motion for partial summary judgment limiting liability (Def. Mot., ECF No. 20)[2] and Cell Deal's motion for summary judgment on liability and damages (Pl. Mot., ECF No. 23)[3], both pursuant to Federal Rule of Civil Procedure 56. The Honorable

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] FedEx's motion includes a memorandum of law (Def. Mem., ECF No. 20-7), Rule 56.1 statement of facts (Def. 56.1 Stmt., ECF No. 20-1), the declaration of Teresa Jones (Jones Decl., ECF No. 20-2) and its four exhibits (Jones Decl. Exs. A–D, ECF Nos. 20-3 through 20-6), and FedEx's reply brief (Def. Reply, ECF No. 22). Cell Deal's opposition papers include a memorandum of law (Pl. Opp., ECF No. 21), the declaration of Eddie Alhob (Alhob Decl., ECF No. 21-1), and Cell Deal's responsive Rule 56.1 statement (Pl. 56.1 Resp., ECF No. 21-2).

[3] Cell Deal's motion includes a memorandum of law (Pl. Mem., ECF No. 23-11), Rule 56.1 Statement of Facts (Pl. 56.1 Stmt., ECF No. 23-1), the declaration of Joshua Bronstein (Bronstein Decl., ECF No. 23-2) and its two exhibits (Bronstein Decl. Exs. F–G, ECF Nos. 23-9 through 23-10), the declaration of Eddie Alhob (Alhob Decl., ECF No. 23-3) and its five exhibits (Alhob Decl. Exs. A–E, ECF Nos. 23-4 through 23-8), the verification to the Amended Complaint (Pl. Verification, ECF No. 23-12), and Cell Deal's reply brief (Pl. Reply, ECF No. 25). FedEx's opposition papers include a memorandum of law (Def. Opp., ECF No. 24 at 8–29), the declaration

Diane Gujarati referred the motions for report and recommendation. For the reasons stated below, the Court respectfully recommends that both motions should be **denied**.

I.  **BACKGROUND**

    A.  **Undisputed or Unopposed Facts[4]**

This is a commercial dispute arising out of several packages that were allegedly lost and damaged during transit. Cell Deal is a corporation authorized to conduct business in New York, with a corporate address in Brooklyn, New York. (Pl. 56.1 Stmt., ECF No. 23-1 ¶ 1.) FedEx is a corporation authorized to do business in New York with headquarters in Arkansas. (Answer to Am. Compl., ECF No. 10 ¶ 5.) FedEx is also a motor carrier licensed by the Federal Motor Carrier Safety Administration (the "FMCSA"), pursuant to the definition of "motor carrier" under 49 U.S.C. § 14706(a)(1). (Def. 56.1 Resp., ECF No. 24 at 2 ¶ 3; Pl. 56.1 Stmt., ECF No. 23-1 ¶ 3.)[5]

        1.  **The Disputed Shipment**

In December 2020, Cell Deal purchased cellphones from AT&T Mobility Invoice ("AT&T"). (Def. 56.1 Stmt., ECF No. 20-1 ¶ 1; Alhob Decl. Ex. B, ECF 23-5 at 2–3.) The

---

of Matthew Attara (Attara Decl., ECF No. 24 at 6–7), and FedEx's responsive Rule 56.1 statement (Def. 56.1 Resp., ECF No. 24 at 2–5).

[4] The Court has considered the facts set forth in the parties' declarations and exhibits attached thereto, and the Rule 56.1 Statements of Facts and opposing 56.1 Statements. The Court must and will construe the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, the parties consider the facts stated herein as undisputed or the opposing party has not proffered evidence in the record to dispute them.

[5] A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." *Ikegwuoha v. Art Vill. Gallery*, No. 21-CV-6263 (JMF), 2023 WL 1868420, at *4 (S.D.N.Y. Feb. 9, 2023) (quoting 49 U.S.C. § 13102(14)). Cell Deal admits that FedEx is a motor carrier, but also contends that FedEx acted as a freight forwarder for the disputed shipment. (Pl. 56.1 Stmt., ECF No. 23-1 ¶ 3.)

2

cellphones were "used, in a working condition, and were not broken nor damaged." (Def. 56.1 Stmt., ECF No. 20-1 ¶ 2.)  The shipment was to travel from AT&T in Flower Mound, Texas to Cell Deal's location in Brooklyn, New York.  (*Id.* ¶ 7.)  Cell Deal hired Del Express, a broker licensed by the FMCSA, to arrange for FedEx to pick up the cellphones from "AT&T c/o CTDI" and to deliver them to Cell Deal.  (Pl. 56.1 Stmt., ECF No. 23-1 ¶ 15; Def. 56.1 Stmt., ECF No. 20-1 ¶¶ 3, 6.)

On or about December 7, 2020, FedEx picked up one pallet from AT&T for shipment to Cell Deal.  (Pl. 56.1 Stmt., ECF No. 23-1 ¶¶ 6–7; Def. 56.1 Stmt., ECF No. 20-1 ¶ 4.)  The pallet included 27 boxes containing the cellphones and weighed a total of 306 pounds.  (Pl. 56.1 Resp., ECF No. 21-2 ¶ 23; Def. 56.1 Stmt., ECF No. 20-1 ¶¶ 17–18.).  On December 11, 2020, the date of delivery, "Eddy" signed the delivery receipt indicating that the shipment was received in apparent good order and did not note any exceptions.  (Jones Decl. Ex. B., ECF No. 20-4 at 7.)

On December 16, 2020, Del Express filed a claim on Cell Deal's behalf for the loss of four boxes totaling $12,796.50 in damages.  (*Id.* at 5–6 (Loss and Damage Claim); Def. 56.1 Resp., ECF No. 24 at 3 ¶ 11.)[6]  The parties dispute whether Cell Deal has actually paid FedEx for transporting the shipment. (Def. 56.1 Resp., ECF No. 24 at 4 ¶ 17; Pl. 56.1 Stmt., ECF No. 23-1 ¶ 17.)[7]  However, they appear to agree that FedEx did not offer to compensate Cell Deal

---

[6] Notwithstanding the claim form that lists "Delexpress" as Claimant's name, FedEx asserts that Cell Deal submitted this claim.  (Def. 56.1 Stmt., ECF No. 20-1 ¶¶ 21–22.)

[7] FedEx refers to a letter it sent to Cell Deal stating that the freight charges remain unpaid (*see* Def. 56.1 Resp., ECF No. 24 at 3 ¶ 8), but the letter is not attached to either party's motion papers.

3

for the full amount of its actual damages. (Pl. 56.1 Stmt., ECF No. 23-1 ¶ 14; Def. 56.1 Resp., ECF No. 24 at 4 ¶ 14.)

### 2. Provisions Governing the Disputed Shipment

The parties do not seriously dispute that Del Express (but not Cell Deal) and FedEx entered into at least two agreements related to the disputed shipment.

Before the disputed shipment, Del Express and FedEx were parties to a Customer Pricing Agreement (the "Del Express Agreement"), effective January 6, 2020. (Def. 56.1 Stmt., ECF No. 20-1 ¶ 8; Jones Decl. Ex. B, ECF No. 20-4 at 2–4.) In the Del Express Agreement, FedEx provided Del Express with favorable shipping rates in exchange for beneficial terms and conditions for FedEx, which applied to all shipments between Del Express and FedEx. (Def. 56.1 Stmt., ECF No. 20-1 ¶ 9.) The Del Express Agreement includes a "Liability Notice," which states in relevant part:

> Except as provided herein, this pricing program is subject to common carriage laws, rules and regulation with the maximum liability coverage not to exceed $25.00 per pound per package or $100,000 per incident, whichever is lower when the shipment is on the US Side of the US-MX border. For other limitations of liability, excess liability coverage and international shipments, *refer to FXF 100 rules tariff item 420*. Those items described in the *National Motor Freight Classification Series (NMFC 100 series*) shipped under released value provisions are subject to the maximum released value depending on the class listed at the time of shipment.

(Jones Decl. Ex. B, ECF No. 20-4 at 4 (emphasis added).) The term "FXF 100 rules tariff item 420" refers to Item 420 of FedEx's Rules Tariff 100 ("FedEx Rules Tariff"), which limits FedEx's maximum liability for "used or reconditioned articles" to "50 cents per pound per package or $10,000 per incident, whichever is lower" when the consignor or consignee does not declare value or "fails to describe articles as used or reconditioned on the original Bill of

4

Lading." (Jones Decl., ECF No. 20-2 ¶ 11; Jones Decl. Ex. B, ECF No. 20-4 at 9 ¶ 6(A).) Item 420 also establishes procedures for a FedEx customer to request higher limits of liability for damage to used goods. (Def. 56.1 Stmt., ECF No. 20-1 ¶ 15.) Neither Cell Deal nor Del Express requested higher limits of liability for the shipment. (*Id.* ¶ 16.) The "NMFC 100 Series" refers to the National Motor Freight Classification Series 100, a document providing voluntary standards for classification of commodities moving in interstate commerce. (*Id.* ¶ 12; Jones Decl. Ex. C, ECF No. 20-5 at 2.) FedEx is a participating member interstate carrier and its rates are based on or refer to NMFC 100 Series' provisions. (*See* Jones Decl. Ex. C, ECF No. 20-5 at 3 (listing FedEx as a participating carrier).)

The disputed shipment was also governed by Del Express's standard bill of lading. (Def. 56.1 Stmt., ECF No. 20-1 ¶ 10; Pl. 56.1 Stmt., ECF No. 23-1 ¶ 7.) The bill of lading lists FedEx as the carrier, "CTDI" as "SHIPPER (FROM)", and Cell Deal as "CONSIGNEE (TO)." (Jones Decl. Ex. B, ECF No. 20-4 at 8.) The bill of lading further states in relevant part:

> It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any said property, that every service to be performed hereunder shall be subject to all bill of lading terms and conditions in the governing classification NMFC 100 on the date of the shipment. Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification NMFC 100 and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

(*Id.*) The bill of lading for the disputed shipment does not state the declared value of the shipment and, in fact, expressly states "Shipment Value Not Specified." (*Id.*)

### B. Procedural History

On January 19, 2021, Cell Deal sued FedEx in the Supreme Court of the State New York, Kings County, alleging negligence in shipping the pallet and seeking damages. (*See*

5

*generally* Compl., *Cell Deal Inc. v. FedEx Freight, Inc.*, Index No. 501396/2021 (N.Y. Sup. Ct.), ECF No. 1-2.)  FedEx timely removed the action to this court based on federal question jurisdiction—specifically, because Cell Deal's state law claims are preempted by the Carmack Amendment.  (Notice of Removal, ECF No. 1.)  Cell Deal subsequently amended the Complaint, replacing allegations of negligence with allegations of Carmack Amendment violations.  (Am. Compl., ECF No. 8.)  Defendant timely answered the Amended Complaint.  (Answer to Am. Compl., ECF No. 10.)  Discovery was certified as closed on January 6, 2022.  (Jan. 6, 2022 Order.)

FedEx requested a pre-motion conference for an anticipated motion for summary judgment, which Cell Deal opposed.  (Def. Ltr., ECF No. 16; Pl. Ltr., ECF No. 17.)  The Court denied the request and ordered briefing.  (Jan. 7, 2022 Order; Jan. 18, 2022 Order.)  Judge Gujarati referred the motions for report and recommendation.  (Oct. 28, 2022 Order.)

## II. **LEGAL STANDARD FOR SUMMARY JUDGMENT**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (cleaned up).  "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (cleaned up).  "If the moving party carries its initial burden, the nonmoving party

6

must come forward with evidence that would be sufficient to support a jury verdict in its favor." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must . . . cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c); *see also McKinney*, 49 F.4th at 738 ("[R]ather than merely 'deny the moving party's allegations in a general way,' the party opposing summary judgment 'must present competent evidence that creates a genuine issue of material fact.'") (citation omitted). Affidavits or declarations used to support or oppose summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

For cross-motions for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (cleaned up). "[I]n reviewing the evidence and considering what inferences may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).

### III. DISCUSSION

FedEx seeks partial summary judgment limiting its maximum liability to $153 pursuant to the terms of the Del Express Agreement and/or the bill of lading. (*See generally* Def. Mem., ECF No. 20-7.) Cell Deal cross-moves for summary judgment as to liability and damages of

7

$109,651 based on the Carmack Amendment. (Pl. Mem., ECF No. 23-11 at 6–9.) As set forth below, Cell Deal is not entitled to summary judgment because there are genuine issues of material fact regarding the amount of damages. Further, partial summary judgment for FedEx is not warranted because there are genuine issues of material fact regarding whether the Del Express Agreement or the bill of lading validly limits FedEx's liability.

### A. *Prima Facie* Case for Carrier Liability

"The Carmack Amendment 'addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment.'" *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 170 (2d Cir. 2014) (quoting *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994)). "[T]he Carmack Amendment allows suits by anyone entitled to recover in the receipt or bill of lading, including the buyer who was to receive the goods." *Chubb Seguros Argentina S.A. v. UPS*, No. 20-CV-3074, 2022 WL 1321401, at *2 (S.D.N.Y. May 3, 2022) (citing *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2d Cir. 1999)).

"The Carmack Amendment 'imposes something akin to strict liability' on carriers of goods." *Lewis Brass & Copper Co. v. ABF Freight Sys., Inc.*, No. 13-CV-3251 (JG), 2014 WL 991726, at *3 (E.D.N.Y. Mar. 13, 2014) (quoting *Mitsui Sumitomo Ins. Co., Ltd. v. Evergreen Marine Corp.*, 621 F.3d 215, 216 (2d Cir. 2010) (per curiam)). "The plaintiff must first show a [*prima facie*] case by demonstrating '(1) delivery to the carrier in good condition; (2) arrival in damaged condition; and (3) the amount of damages caused by the loss.'" *Lewis Brass*, 2014 WL 991726, at *3 (quoting *Project Hope v. M/V IBN SINA,* 250 F.3d 67, 73 n.6 (2d Cir. 2001)). "Once the shipper establishes a [prima facie] case of Carmack liability by

8

showing delivery in good condition, arrival in damaged condition, and the amount of damages, the carrier is liable for the actual loss or injury to the property it transports, unless the carrier can establish that it was free of negligence and that the loss or damage was caused by one of five excusable factors." *Sompo Japan*, 762 F.3d at 171 (cleaned up).[8]

In its motion papers and in opposition to FedEx's motion, Cell Deal argues that the record establishes a *prima facie* case of liability against FedEx because the cellphones were tendered to FedEx for shipment in good condition, the shipment was delivered to Cell Deal in damaged condition, and Cell Deal suffered damages of $109,651. (*See* Pl.'s Mem, ECF No. 23-11 at 5–8; Pl.'s Opp., ECF No. 21 at 5–7.) FedEx initially did not respond to Cell Deal's arguments in its opposition to Cell Deal's motion, instead insisting that the Court should focus on the limited damages available to Cell Deal. (Def. Opp., ECF No. 24 at 16.) In reply papers related to its motion, FedEx finally asserts that Cell Deal failed to establish a *prima facie* case of Carmack Amendment liability because: (1) the amount of damages is contested and (2) Cell Deal offers only inadmissible evidence regarding the shipment's condition before or after delivery. (Def. Reply, ECF No. 22 at 11–15.) For the reasons set forth below, the Court agrees that genuine issues of material fact remain regarding the amount of damages.[9]

"The liability imposed under [the Carmack Amendment] is for the actual loss or injury to the property caused" by a carrier. 49 U.S.C. § 14706(a)(1). "While it is true that damages under the Carmack Amendment should generally be based on the fair market value, [the

---

[8] Specifically, a defendant "is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Lewis Brass*, 2014 WL 991726, at *3 (quoting *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)).

[9] For this reason, the Court does not address the remaining elements of the *prima facie* case.

9

Second Circuit has] held that it need not be applied if 'circumstances suggest a more appropriate alternative.'" *Project Hope*, 250 F.3d at 77 (citing *Contempo Metal Furniture Co. v. East Tex. Motor Freight Lines Inc.*, 661 F.2d 761, 764 (9th Cir. 1981) and quoting *Thyssen, Inc. v. S/S Eurounity*, 21 F.3d 533, 540 (2d Cir. 1994)). "For instance, the Second Circuit has approved the award of repair or replacement costs as an alternative measure of damages in the absence of an open market from which a fair market value could be set . . . . The Carmack Amendment also permits recovery of lost profits unless they are speculative." *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-CV-209 VLB, 2011 WL 3351969, at *8 (D. Conn. Aug. 3, 2011) (citing *Project Hope*, 250 F.3d at 77 and *Camar Corp. v. Preston Trucking Co., Inc.*, 221 F.3d 271, 277 (1st Cir. 2000)).

Here, the record reflects that Cell Deal's position on the value of the cargo has changed over time such that summary judgment is not appropriate. At the time of the delivery, Del Express filed a claim with FedEx on Cell Deal's behalf, declaring a total loss of $12,796.50 for four missing boxes. (Def. 56.1 Stmt., ECF No. 20-1 ¶¶ 22–23; Pl. 56.1 Resp., ECF No. 21-2 ¶¶ 21–22.) According to Cell Deal, eight of the total 27 boxes on the pallet were damaged or missing, but Cell Deal filed a claim with FedEx for the missing boxes only. (Def. 56.1 Stmt., ECF No. 20-1 ¶ 23; Pl. 56.1 Resp., ECF No. 21-2 ¶¶ 21, 23.) In the state court complaint filed in January 2021, Cell Deal alleged that the total amount of damages was $140,866— specifically, $115,866 for the cost of the cellphones and "at least" $25,000 for lost profits. (Notice of Removal Ex. A., ECF No. 1-2 at 6–7 ¶¶ 9, 13, 18, 20 (Verified Complaint).) After the case was removed to federal court, Cell Deal alleged damages of $109,651 for "damaged" and "missing" freight. (Am. Compl., ECF No. 8 ¶¶ 21, 23–24.) In discovery, Cell Deal claimed damages "pursuant to the damaged pallet and stolen/missing boxes in the sum of

$109,000." (Jones Decl. Ex. A., ECF No. 20-3 at 5–6 (response to Interrog. No. 2 referring to "Exhibit B" for an itemized breakdown).)[10]  Cell Deal now returns to its claim for total damages in the amount of $109,651, based on the amounts it paid to AT&T to purchase the cellphones.[11]  (Def. 56.1 Stmt., ECF No. 20-1 ¶ 24; Alhob Decl. Ex. B, ECF No. 23-5 at 2–3 (AT&T invoice).)  Construing these facts in the light most favorable to FedEx, a reasonable jury could find that Cell Deal's damages were between $12,796.50 and $115,866 based on their assessment of Cell Deal's proffered evidence, which is an appropriate role for the factfinder.  *See Great Am. Ins. Co. of New York v. TA Operating Corp.*, No. 06-CV-13230 (WHP), 2008 WL 5335317, at *8 (S.D.N.Y. Dec. 8, 2008) (holding that jury must determine whether shipper suffered lost profits).

Based on the foregoing, the Court respectfully recommends that Cell Deal's motion for summary judgment should be denied.

### B. Limit on Carrier Liability

Even assuming that Cell Deal had met its *prima facie* burden, summary judgment is not warranted because genuine issues of material fact remain regarding whether FedEx validly limited its liability.

---

[10] FedEx did not attach the exhibits to Cell Deal's interrogatory responses to its motion papers, and Cell Deal did not proffer the interrogatory responses at all.

[11] In addition to the fluctuating damages amount, Cell Deal has not established as a matter of law that it is entitled to the AT&T invoice prices as the appropriate damages.  "To recover market value, Plaintiff must show that it in fact suffered lost profits and that it could not mitigate damages by substitution of comparable goods from the market.  If this showing is not made, the market value measure of damages may be discarded and other more accurate means resorted to."  *Id.* (quoting *Levi Strauss & Co. v. Sea-Land*, No. 00-CV-7585 (JSM), 2003 WL 21108311, at *1 (S.D.N.Y. May 15, 2003)).  Cell Deal makes no such showing.

11

A motor carrier may limit its liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). "[W]here a carrier attempts to limit a shipper's recovery under the Carmack Amendment by invoking a limitation of liability provision contained in an agreement between the parties, courts apply federal common law to determine the validity of that limitation." *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CIV-3770 (JFK), 2015 WL 5098119, at *3 (S.D.N.Y. Aug. 31, 2015) (citing *Great Am. Ins. Co. of New York*, 2008 WL 5335317, at *4).

"There are essentially two requirements of an enforceable limitation on liability under the Carmack Amendment: (1) 'the limitation of liability was the result of a fair, open, just and reasonable agreement between carrier and shipper, entered into by the shipper for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount or risk,' and (2) 'the shipper was given the option of higher recovery upon paying a higher rate.'" *Stephenson Equip. v. ATS Specialized, Inc.*, No. 5:10-CV-1517 GTS/TWD, 2013 WL 4508444, at *7 (N.D.N.Y. Aug. 23, 2013) (quoting *Shippers Nat'l Freight Claim Council, Inc. v. ICC*, 712 F.2d 740, 746 (2d Cir. 1983)). "In evaluating whether these prerequisites are met, courts have considered such factors as: (1) whether the carrier has given adequate notice of the limitation of its liability to the shipper; (2) the economic stature and commercial sophistication of the parties; and (3) the availability of 'spot' insurance to cover a shipper's exposure." *Gemnet Express, Inc. v. Fed. Express Corp.*, No. 06-CV-2648 (DF), 2009 WL 928299, at *5 (S.D.N.Y. Mar. 30, 2009) (citation omitted).

12

1. **Del Express Agreement**

FedEx first relies on the terms of the "Liability Notice" in the Del Express Agreement, which incorporates the FedEx Rules Tariff that limits FedEx's liability for used and reconditioned goods to fifty cents per pound, or a total of $153 for the disputed shipment. (Def. Mem., ECF No. 20-7 at 15; Jones Decl., ECF No. 20-2 ¶¶ 7–10.) FedEx insists that Cell Deal agreed to the terms of the Del Express Agreement, including the FedEx Rules Tariff, by hiring Del Express as the broker for the shipment. (Def. Mem., ECF No. 20-7 at 12–13.) In its opposition, Cell Deal does not directly address these arguments, though Eddie Alhob, the president and owner of Cell Deal, concedes that Del Express and FedEx "handled the pricing" for shipments. (Pl. 56.1 Resp., ECF No. 21-2 ¶ 9.)

When courts uphold a carrier's limitation of liability, the carrier has put forth credible evidence that: (1) the shipper was involved in negotiations of the agreement containing the limitation of liability and (2) the shipper was familiar with the carrier's limitations. *See, e.g., Design X Mfg., Inc. v. ABF Freight Sys., Inc.*, 584 F. Supp. 2d 464, 469–70 (D. Conn. 2008) (carrier's summary judgment evidence included deposition testimony from shipper's vice-president and affidavits regarding negotiations about the liability limitation); *see also Royal & Sun All. Ins.*, 2015 WL 5098119, at *6 (carrier's summary judgment evidence included shipper's deposition testimony about negotiations leading to limitation of liability). In contrast, viewing the record here in the light most favorable to Cell Deal, it is not clear that the Del Express Agreement between Del Express and FedEx did or could provide adequate notice to Cell Deal about FedEx's limitation of liability. *See, e.g., Chubb Seguros*, 2022 WL 1321401, at *2 (denying summary judgment because, *inter alia*, the record did not include specifics about negotiations or whether carrier's private agreement with a third party was

13

known to the shipper).  It is undisputed that Cell Deal is not a party to the Del Express Agreement, which was negotiated between Del Express and FedEx.  There is also no evidence in the record that Alhob or any other representative of Cell Deal received copies of the Del Express Agreement.  According to Cell Deal, Del Express and FedEx "handled the pricing" for shipments, which suggests that Cell Deal was not familiar with and was not involved in negotiating the provisions of the Del Express Agreement, including the inclusion of the FedEx Rules Tariff.  (Pl. 56.1 Resp., ECF No. 21-2 ¶ 9.)  The Del Express Agreement does not include the terms of the FedEx Rules Tariff, which FedEx concedes is separately set forth on its public website.  (*See* Jones Decl., ECF No. 20-2 ¶ 14.)  Even if the terms were included, FedEx presents no evidence that the information was provided to Cell Deal before the disputed shipment.

On this record, a reasonable jury could find that Cell Deal did not have notice of the FedEx Rules Tariff and its limitation of liability from the Del Express Agreement.  Therefore, summary judgment is not proper on this ground.

### 2. Bill of Lading

FedEx also argues that the bill of lading for the disputed shipment limits its maximum liability for used goods because it incorporates by reference the NMFC 100 Series.  (Def. Mem., ECF No. 20-7 at 15–21.)  Specifically, "Item 172" of the NMFC 100 Series, titled "Limitation of Carrier Liability Where Value is Not Declared by Shipper," limits carrier liability when a shipper fails to declare the value of the shipment but the carrier inadvertently accepts the shipment.  (Jones Decl. Ex. C, ECF No. 20-5 at 4.)  When this happens, Item 172 states that the provisions of "other tariffs" limit the carrier's liability, and according to FedEx, the "other tariffs" include Item 420 of the FedEx Rules Tariff and the limitations of liability

14

set forth therein. (Def. Mem., ECF No. 20-7 at 16–17.)  FedEx further claims that Cell Deal is bound by the bill of lading because Del Express created the bill of lading as Cell Deal's agent, even if Cell Deal did not understand references to "NMFC" or "tariffs." (*Id.* at 15 & n.3.)

Admittedly, whether the limitations on FedEx's liability were adequately communicated to Cell Deal in the bill of lading is a closer call.  "A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.'" *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94 (2010) (quoting *Norfolk Southern R. Co. v. James N. Kirby,* 543 U.S. 14, 18–19 (2004)).  If a sophisticated shipper directly prepares the bill of landing, it is usually treated as evidence that the limitation on liability was set forth in a "reasonably communicative form," and therefore, binding on the shipper. *See e.g.*, *Design X Mfg.*, 584 F. Supp. 2d at 469 (granting summary judgment in favor of the carrier, in part due to evidence that the shipper prepared the bill of lading form.)  The facts are distinguishable here because Del Express, not Cell Deal, completed the bill of lading on Cell Deal's behalf. At the same time, it is reasonable to infer that Cell Deal provided the relevant information to Del Express regarding the shipment's condition, weight, contents, and any requested special instructions such that Cell Deal should have been aware of any potential limitations on liability.

However, "'[t]he conditions to be considered . . . [in assessing whether adequate notice of a limitation of liability has been provided to the shipper] include the customer's familiarity with the contract of carriage, the time and incentive under the circumstances to study the provisions of the contract, and any other notice that the customer received outside of the contract.'" *Stephenson Equip.*, 2013 WL 4508444, at *7 (quoting *Gemnet Express*, 2009 WL

15

928299, at *7). Here, there is nothing in the record to suggest that the bill of lading reasonably communicated FedEx's limitation of lability directly to *Cell Deal*, not to Del Express. Like the Del Express Agreement, the bill of lading does not include the terms of the FedEx Rules Tariff or the website for the tariff's terms and conditions. Instead, it states (in miniscule font), "Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification NMFC 100 and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns." (Jones Decl. Ex. B, ECF No. 20-4 at 8.) The relevant provisions of the NMFC 100 Series are also not located on the bill of lading, and even if they were, they would not include Item 420 of the FedEx Rules Tariff containing FedEx's limitation of liability. (*See* Jones Decl. Ex. C, ECF No. 20-5.) The only signature on the bill of lading appears to be that of a FedEx representative, not anyone from Cell Deal. Viewing these facts in favor of Cell Deal, a jury could reasonably infer that FedEx did not adequately provide notice to Cell Deal, via the bill of lading, about the limitations of liability.

In similar cases addressing the enforceability of limited liability when an agent signed the bill of lading on behalf of the shipper, the court evaluated a number of factual circumstances to assess whether the shipper and agent engaged in prior dealings, whether the limited liability language was set forth "in a reasonably prominent writing" on the form, and whether the shipper received a copy of the shipping documents from the agent prior to shipment. *See, e.g.*, *Martino, S.A. v. Transgroup Express*, 269 F. Supp. 2d 448, 450 (S.D.N.Y. 2003). Here, FedEx relies only on the existence of the bill of lading signed by Del Express to support its assertion that Cell Deal should be bound by the acts of its agent. FedEx has not offered any deposition testimony or other evidence, other than the provision in tiny font on the

16

bill of lading, that the liability limitation was "reasonably communicat[ed]" to Cell Deal in the bill of lading.

For the foregoing reasons, FedEx has not established, as a matter of law, that the purported agreement to limit its liability was "the result of a fair, open, just, and reasonable agreement" with Cell Deal. *Gemnet Express*, 2009 WL 928299, at *8 (cleaned up). Therefore, the Court respectfully recommends denying FedEx's motion for partial summary judgment limiting liability.

## IV. CONCLUSION

Based on the foregoing, the Court respectfully recommends that the cross-motions for summary judgment at ECF Nos. 20 and 23 should be **denied**.

A copy of this Report and Recommendation is being served on all parties via ECF. Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Gujarati. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
February 28, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

17